229 P.3d 545 (2009)
2009 OK CIV APP 103
In the Matter of the ADOPTION OF M.A.R. and C.A.R., Minor Children.
Jeffery Price Rodgers, Natural Father, Appellant,
v.
Nancy Pierce, Natural Mother, and Christopher Pierce, Stepfather and Prospective Adoptive Father, Appellees.
No. 106,648. Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.
Court of Civil Appeals of Oklahoma, Division No. 2.
October 20, 2009.
Rehearing Denied November 17, 2009.
*546 Robert H. Jaques, Guymon, OK, for Appellant.
Christopher J. Liebman, Guymon, OK, for Appellees.
DEBORAH B. BARNES, Presiding Judge.
¶ 1 Jeffrey Price Rodgers (Father), the natural father of the minor children M.A.R. and C.A.R. (Children), appeals the trial court's Order filed on November 7, 2008, declaring Children eligible for adoption without Father's consent. We reverse and remand with instructions.[1]

*547 FACTS AND PROCEDURAL BACKGROUND
¶ 2 Father and Nancy Pierce (Mother) were divorced in 2002. The decree of divorce granted custody of Children to Mother[2] and ordered Father to pay, during the time period relevant to this appeal,[3] $433 a month for child support. Father was also granted visitation rights of "every other weekend."[4]
¶ 3 In September of 2003, Mother married Christopher Pierce (Stepfather) and, on April 27, 2007, Stepfather and Mother filed a Petition for Adoption Without Consent. Pursuant to the statute in effect at the time the Petition was filed, 10 O.S.2001 § 7505-4.2,[5] Mother and Stepfather argue that adoption of Children should proceed without the consent of Father because he has willfully failed, refused or neglected to contribute to the support of Children in substantial compliance with the terms of the divorce decree, and he has failed to establish and/or maintain a substantial and positive relationship with Children, both for a period of 12 consecutive months out of the last 14 preceding the filing of the petition for adoption.[6] See 10 O.S. 2001 §§ 7505-4.2(B)(1), 7505-4.2(H).[7]
¶ 4 On June 16, 2008, Father filed, pro se, a Motion of Response to Adoption Proceeding[8] in which Father stated that he did "NOT Consent to the petition for adoption," and argued he had "[paid] child support in the past 12 months." He further argued that he had "maintained a parent relationship with both daughters," and that Mother's failure to comply with the divorce decree order on visitation had forced him to file a motion to enforce his visitation rights in March of 2007.
¶ 5 After an evidentiary hearing, the trial court, in its Order filed on November 7, 2008, found, in relevant part: (1) that Father willfully failed, refused, or neglected to substantially comply with the child support order for 12 consecutive months during the relevant 14-month period "despite the child support tendered during that time," (2) that Father failed to establish and/or maintain a substantial and positive relationship with Children for 12 consecutive months during the relevant 14-month period, and (3) that Father's single motion in March of 2007 to enforce his visitation rights during the relevant 14-month period "does not constitute sufficient legal action to establish and/or maintain a substantial and positive relationship with [Children]" under 10 O.S.2001 § 7505-4.2(H)(2). The trial court found, therefore, that the adoption proceedings should continue without Father's consent.
¶ 6 From this Order, Father appeals.

STANDARD OF REVIEW
¶ 7 "Because adoption without parental consent effects a termination of parental rights, the magnitude of the rights involved requires proof that is clear and convincing." In the Matter of the Adoption of C.R.B., 1999 OK CIV APP 104, ¶ 5, 990 P.2d 316, 318. (Citations omitted.) "The burden is on the party seeking to adopt without consent to prove such adoption is warranted by clear and convincing evidence." *548 In the Matter of the Adoption of C.D.M., 2001 OK 103, ¶ 13, 39 P.3d 802, 807. (Footnote omitted.) "Accordingly, the decision of the trial court will not be disturbed unless it fails to rest on clear and convincing evidence." Id. (Footnote omitted.)
¶ 8 This Court will examine issues of fact under a "clear and convincing" standard and issues of law de novo, without deference to the trial court's judgment. In the Matter of the Adoption of J.N.K, 2000 OK CIV APP 132, 15 P.3d 521.

ANALYSIS
¶ 9 "The law presumes that consent of a child's natural parents is necessary before an adoption may be effected." In the Matter of the Adoption of C.D.M., 2001 OK 103, ¶ 13, 39 P.3d 802, 807. (Footnote omitted.) The statutory sections confronted in this case, however, allow an adoption to proceed without a natural parent's consent under certain conditions. In construing the specific language of these statutory sections and applying them to this appeal, we are guided by the following principles:
It is well-settled that adoption statutes must be strictly construed. Strict construction favors the rights of natural parents when the controversy is with one who seeks to destroy the parental status. Parents have a fundamental, constitutionally-protected interest in the continuity of the legal bond between themselves and their children. The integrity of familial status is a value to be regarded with great solicitude.
In the Matter of the Adoption of V.A.J., 1983 OK 23, ¶ 6, 660 P.2d 139, 141. (Footnotes omitted.)

I. Title 10 O.S.2001 § 7505-4.2(B)(1)
¶ 10 The trial court found, pursuant to 10 O.S.2001 § 7505-4.2(B)(1), that Father willfully failed, refused, or neglected to substantially comply with the child support order during the relevant period "despite the child support tendered during that time." Father claims, however, that his partial compliance with the child support order and/or his brief incarceration, both during the relevant 14-month period, prevent such a finding and his consent to an adoption of Children should remain necessary.
¶ 11 The relevant portion of 10 O.S.2001 § 7505-4.2(B) states:
B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child or a petition to terminate parental rights pursuant to Section 7505-2.1 of this title, has willfully failed, refused, or neglected to contribute to the support of such minor:
1. In substantial compliance' with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support....
This statute, strictly construed and applied to this case, requires that any failure on Father's part to substantially comply with his child support order occur for 12 consecutive months and that such failure be willful or Father's consent to the adoption is necessary.
¶ 12 We find that for the following three months out of the relevant 14-month period, Father either substantially complied with the child support order, or his failure to do so was not willful. First, in April 2007, Father made a child support payment of $369. Although this payment was $64 less than the $433 per month required at this time, we find that it was in substantial compliance with the child support order pursuant to 10 O.S.2001 § 7505-4.2(B)(1), taking into account the great solicitude that is warranted when the continued bond of a parent to his or her children is threatened with termination. See In the Matter of the Adoption of V.A.J., 1983 OK 23, ¶ 6, 660 P.2d 139, 141.
¶ 13 Second, in March 2007, Father made a child support payment of $1,599, almost four times the monthly amount of $433 required by the child support order. Therefore, Father substantially complied with the child support order for the month of March 2007.
¶ 14 Third, during January 2007, there is no clear and convincing evidence that Father had any financial ability to pay child support *549 or that he incapacitated himself in order to avoid the duty of paving child support. Therefore, Father's failure to pay child support during this month cannot be adjudged willful. As found in In the Matter of the Adoption of D.L.A., 2003 OK CIV APP 7, 62 P.3d 796, because the party seeking adoption without the consent of the natural father failed to produce clear and convincing evidence that the father had any income while incarcerated other than his prison pay, or that his incarceration resulted from an intent to avoid the support duty imposed by law, the father's failure to pay child support while in prison was not willful.
¶ 15 Here, Father was incarcerated from December 4, 2006, to February 18, 2007.[9] "Imprisonment cannot be equated with willful failure to contribute to the child's support." In the Matter of the Adoption of V.A.J., 1983 OK 23, ¶ 7, 660 P.2d 139, 141. Furthermore, there is no clear and convincing evidence that Father had a source of income or other means with which to pay child support during this period. Therefore, for at least the entire month of January, Father had no ability to substantially comply with the child support order and no opportunity to "willfully" fail to do so.
¶ 16 Having made this determination, we must ask "whether the natural parent intentionally incapacitated himself for the purpose of avoiding the duty imposed by law...." Id. We find that there is no clear and convincing evidence to support such a finding. Father spent the year of 2006 in Pampa, Texas, after moving there from Guymon, Oklahoma, in search of employment.[10] After failing to find any dependable employment, Father moved back to Guymon, Oklahoma, in December 2006, where he had "more connections" with which to find employment and where he could save money by living with his parents.[11] Father was arrested for failure to pay child support a few days after moving back to Guymon in December 2006.[12] Mother and Stepfather have not produced clear and convincing evidence that Father intentionally incapacitated himself for the purpose of avoiding his child support duty. Therefore, we find that Father's failure to pay during January 2007 was not willful.
¶ 17 In sum, we find that for at least three of the relevant 14 monthsnamely, March 2007, April 2007, and January 2007Father either substantially complied with the child support order, or his failure to do so was not willful. As a result, there have not been 12 consecutive months of willful failure to substantially comply with the child support order during the relevant 14-month period. We find that the trial court's determination that Father's consent to the adoption is not required pursuant to 10 O.S.2001 § 7505-4.2(B) is not supported by clear and convincing evidence.

II. Title 10 O.S.2001 § 7505-4.2(H)(2)
¶ 18 Father claims that he was denied the opportunity to establish and/or maintain a substantial and positive relationship with Children because of the actions of Mother, thus triggering the application of 10 O.S.2001 § 7505-4.2(H)(2). Father argues, pursuant to 10 O.S.2001 § 7505-4.2(H)(2), that his motion to enforce visitation rights, filed in the District Court of Texas County on March 30, 2007,[13] constitutes sufficient legal action to establish and/or maintain a substantial and positive relationship with Children and that, therefore, his consent is required in these adoption proceedings.[14] Title 10 O.S.2001 § 7505-4.2(H)(2) states:
2. In any case where a parent of a minor claims that prior to the receipt of notice of the hearing provided for in Sections 7505-2.1 and 7505-4.1 of this title, such parent had been denied the opportunity to establish and/or maintain a substantial *550 and positive relationship with the minor by the custodian of the minor, such parent shall prove to the satisfaction of the court that he or she has taken sufficient legal action to establish and/or maintain a substantial and positive relationship with the minor prior to the receipt of such notice.
In applying this language to the case at bar, the trial court determined, in effect, that Father's legal action taken in March 2007, was "too little, too late."[15]
¶ 19 As stated above, Father filed a motion to enforce his visitation rights in March 2007.[16] Mother and Stepfather did not file their Petition for Adoption Without Consent until April 27, 2007. Therefore, Father's legal action clearly took place before receipt of notice of the April 27, 2007 Petition or its subsequent hearing, and there is no clear and convincing evidence that Father's legal action was "too late."
¶ 20 The only remaining issue for this Court to determine is whether the trial court's finding that Father's legal action was too littlei.e., was not "sufficient legal action to establish and/or maintain a substantial and positive relationship with [Children]"is supported by clear and convincing evidence. Although Father's motion to enforce his visitation rights was filed toward the end of the relevant 14-month period in which, according to Mother and Stepfather, Father made little to no attempt to contact Children, we must strictly construe the statutory language. All that is required by the statute is sufficient legal action to establish a substantial and positive relationship with Children. To this end, Father not only filed a motion to enforce his visitation rights within the relevant time period, but that motion eventually led to a successful "finding that [Mother] intentionally and without cause denied Court-ordered visitation" to Father.[17] Father was then granted renewed visitation which began in May 2007.[18] Father stated, "the same week [the trial judge] let me see the kids I went and seen them."[19] The following exchange elaborates:
[Father's Attorney:] ... you hired [an attorney] to file the application to enforce visitation; is that correct?
[Father:] Yes, sir, that's correct.
[Father's Attorney:] And that application was filed, correct?
[Father:] Yes, it was.
[Father's Attorney:] And the Judge did order your visitation enforced with modifications to that visitation, correct?
[Father:] Yes, that's correct.
[Father's Attorney:] And you in fact did visit with your children the weekend after that order was entered; is that correct?
[Father:] Yes, I gotI'd visit them every other weekend. First that weekend of the Court date, then every other weekend like the divorce decree states on visitation....
[E]very other weekend I picked them up. I had them from 6:00 on Friday until 6:00 on Sunday. I picked them up every other weekend.[20]
¶ 21 We find there is no clear and convincing evidence that Father's filing in late March 2007 was insufficient legal action to establish and/or maintain a substantial and positive relationship with Children. Father's action more than satisfies what the statute demands. The trial court's determination that Father's March 2007 motion to enforce his visitation rights was "too little"i.e., was insufficient legal action to establish and/or maintain a substantial and positive relationship with Childrenis not supported by clear and convincing evidence.[21]

CONCLUSION
¶ 22 For the reasons set forth, the trial court's Order, filed November 7, 2008, is *551 reversed, and the matter is remanded with instructions to deny the adoption Petition, absent Father's consent.
¶ 23 REVERSED AND REMANDED WITH INSTRUCTIONS.
WISEMAN, V.C.J., and GOODMAN, J., concur.
NOTES
[1] Appellees filed a Counter-Petition in Error, urging the trial court's Order be affirmed.
[2] Mother and Father had one other child who is now over the age of 18 and who is not a subject of these adoption proceedings.
[3] As explained below, the relevant time period spans from February 27, 2006, to April 27, 2007.
[4] Record (R.), p. 123.
[5] The relevant version applicable to this appeal is 10 O.S.2001 § 7505-4.2, which became effective June 8, 2001. Effective November 1, 2007, after the Petition for Adoption was filed, the Oklahoma Legislature made revisions to this section, but they do not apply to the portions of the statute applied to this case. Although the Legislature enacted substantial amendments to Title 10 of the Oklahoma Statutes during the 2009 Session, the language from § 7505-4.2 relevant to this appeal has remained unaltered.
[6] Mother and Stepfather also argued below, pursuant to 10 O.S.2001 § 7505-4.2(G), that Father's consent for adoption was not necessary because he "abandoned" Children, but this argument, rejected by the trial court in its Order filed on November 7, 2008, is not raised on appeal.
[7] Based on the statutory language and the date of the filing of the Petition for Adoption Without Consent, the relevant time period is from February 27, 2006, to April 27, 2007.
[8] R., p. 14.
[9] Transcript (Tr.), pp. 98-99; Brief of Appellant, pp. 1-2; Brief of Appellee, p. 7.
[10] Tr., pp. 77, 101.
[11] Tr., pp. 79, 80.
[12] Tr., pp. 101-102.
[13] Tr., p. 156.
[14] Following Father's motion to enforce his visitation rights, the trial court made a "finding that [Mother] intentionally and without cause denied Court-ordered visitation in cause FD-2002-26" to Father. Tr., p. 196.
[15] Tr., p. 197.
[16] Tr., p. 156.
[17] Tr., p. 196.
[18] Tr.,p. 119.
[19] Tr., p. 82.
[20] Tr., pp. 65-66.
[21] Having made this determination, we need not address Father's argument that he received deficient notice under 10 O.S.2001 § 7505-4.1(0(1).